COOPER & COLE BROTHERS, APPELLANT, v. GEORGE P. WHITHAM ET AL., APPELLEES.

FILED APRIL 23, 1908.   No. 15,175.

Pleading: CONSTRUCTION. Petition set out in the opinion examined, and *held* to state a cause of action only for goods and merchandise sold and delivered.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE.  *Affirmed.*

*Walter J. Lamb* and *F. B. Sidles,* for appellant.

*Charles H. Epperson* and *George E. Hager, contra.*

FAWCETT, C.

The petition alleges:  "The plaintiff complains of the defendant, and for cause of action shows that at all times

herein mentioned the plaintiff has been and is a corporation duly organized and incorporated under the laws of Nebraska, and that the defendants George P. Whitham and J. E. Wilkins have been and are a copartnership doing business under the style and firm name of Whitham & Wilkins; and the plaintiff further shows that on the 1st day of January, 1906, the said defendants were indebted unto this plaintiff in the sum of $882.64 for a balance of an account for goods and merchandise before that time by the plaintiff sold and delivered to the said defendants at their instance and request, which said sum and balance was on said 1st day of ............due and unpaid, with interest thereon from said last named date. A copy of the said account is hereto attached, with all payments and credits thereon. Wherefore plaintiff demands judgment against said defendants for the sum of $882.64, with 7 per cent. interest thereon from January 1, 1906." The answer is a general denial.

In their brief counsel for plaintiff argue at length and cite authorities in support of their second assignment—that the court erred in overruling their objections to a large number of questions and answers offered by defendants and received by the court. The theory upon which they claim that this line of proof should not have been received is that plaintiff is entitled to recover on an account stated, and that defendants could not introduce the testimony objected to, under their general denial. If plaintiff had declared on an account stated, counsels' contention would be well grounded; but the petition does not tender that issue. We cannot, therefore, follow plaintiff into this field, and consider either its assignments of error or authorities on the theory of an account stated. Nor do we think that the question as to what acts of an agent will bind his principal, or as to what constitutes ratification by a principal of the unauthorized acts of its agent, has any place in the consideration of this case. The one simple question tendered by the pleadings is: Did plaintiff sell the goods and merchandise in controversy

to the defendants?  No question of agency, estoppel or ratification is in any manner raised by the pleadings; hence, the only question in the case is one of fact.

It appears that plaintiffs are wholesale dealers, among other things, in steam heating and plumbers' supplies. The transactions between the parties, so far as the record discloses, opened on May 20, 1905, when defendants addressed to plaintiff this letter: "Fairfield, Neb., May 20, 1905.  Cooper & Cole Bros., Lincoln, Neb.  Gentlemen: The time is about ripe to get hold of some business in bath outfits.  We have a number of good prospects. Have your salesman G. G. W. make it a point to get around here soon.  Yours truly, Whitham & Wilkins." Indorsed on this letter with pencil we find: "Wrote Williams 5-22 to call on these parties." "G. G. W." seems to have been a traveling salesman of the plaintiff, with whom defendants had had a prior conversation, the nature of which defendants were not permitted to show. Shortly after defendants mailed that letter one Gilbert Cooper, a son of the Mr. Cooper of Cooper & Cole Bothers, appeared at defendants' store in Fairfield and introduced himself to defendants, stating, as testified to by defendant Whitham, that "he was the party who went around over the state of Nebraska and took contracts for these air pressure systems, and overseen them and superintended the work while it was in progress"; that what he desired the defendants to do was to give him the names of parties whom they knew, or heard of, wanting such systems; that if he succeeded in entering into contracts with any of the parties there he would want defendants to receive and distribute the material, to advance the money to pay the freight on the goods, and also to pay the workmen who would be employed on the jobs, and that he would give them a certain agreed compensation; that they were to collect the moneys, and out of the moneys collected were to reimburse themselves for their advancements and their agreed compensation, and turn

36

the balance over to him; and that they agreed to this
arrangement. The testimony by defendants shows that
after making the above arrangement with Mr. Cooper
they introduced him to a number of citizens of Fairfield,
whom they thought might desire the installation of water
or heating systems. Mr. Cooper then actively began the
work in hand and prosecuted it so successfully that he
made oral contracts for ·the installation of either water
or heating plants, in some instances both, in five different
houses in Fairfield. The gentlemen to whom he made
these sales were introduced as witnesses, and all testified
unqualifiedly that they conducted their negotiations and
made their agreements with Cooper alone; that defend-
ants took no part in the negotiations, and had nothing
to do with the making of the agreements; that they were
told by Cooper, after the work had progressed to that
stage where payment should be made, to make their pay-
ments to Whitham & Wilkins. One of the gentlemen
testifies that he understood that Whitham & Wilkins
were getting a rake-off; but they all testified that Cooper
conducted the negotiations, closed the contracts, and that
he (Cooper) personally supervised and directed the work
of installing the plants. The evidence also shows, with-
out contradiction, that the plumbers, and even the help-
ers, were sent to Fairfield either by the plaintiff or by
Cooper. In two instances it is shown by plaintiff's own
witnesses that the men were sent there by Mr. Cooper,
Sr. The defendants themselves both testify that they had
nothing to do with the making of the contracts; that they
did not participate in the negotiations; that they had
nothing whatever to do with supervising the work of in-
stalling the plants; that all they did was to receive the
stuff when it arrived, see that it was sent to the places
where it should go, and receive and remit the moneys
paid by the parties. This testimony on the part of de-
fendants and their witnesses is contradicted by Cooper
and by one of the plumbers, a colored man named Harris,
whom the elder Cooper sent to Fairfield to do the work.

Harris testified that when Mr. Cooper, Sr., sent him to Fairfield he told him that some parties to whom they were selling goods wanted a man, and that he was sending him there for them. It is significant, however, that at the time Harris was selected to go to Fairfield to engage in this work he then was, or immediately prior thereto had been, engaged in similar work for either the plaintiff or Gilbert Cooper at Fairmont, and, further, that when Harris arrived at Fairfield it was in company with Gilbert Cooper and a helper who also had worked at Fairmont with Harris.

Under the issues as tendered by the pleadings, we think all of the testimony objected to by plaintiff and relied upon in their assignments of error here was proper, and that the court did not err in admitting it. Plaintiff places great reliance upon the fact that, when the goods were shipped from time to time to the defendants, plaintiff mailed defendants invoices of the goods which upon their face indicated that the goods were being sold to defendants, and, further, that from time to time defendants sent to plaintiff written orders for specific articles to be used in work under way. Defendants both testify that the orders they sent in from time to time were under instructions from Mr. Cooper, who told them that whenever the men advised them that anything was needed for them to order it, and that they never, in any case, ordered anything from the house, except when the plumber engaged upon the work would come and advise them of the fact that such articles were needed. They also both testify that, when they received the first of these invoices indicating that the house was not only shipping the goods, but billing them, to them, they spoke to Cooper about it, and Cooper told them that that was merely a matter of form with the house in keeping their accounts; that they need pay no attention to them; that everything was all right, just as they had arranged. On one or two occasions, when defendants were called upon by plaintiff for remittances, they spoke to Cooper about it. He told

them they need not pay any attention to them; that they did not have to pay the money until the collections were made as they had agreed. Defendants acted upon these statements, and nothing seems to have been done by plaintiff to enforce the request for remittances until after the work was substantially all completed, when they sent Cooper and an attorney to Fairfield to obtain a settlement from defendants. Defendants expressed a perfect willingness to make the settlement on the terms of the agreement which they claimed to have made, viz., by deducting from the moneys which they had collected, the amount of their advancements and compensation. This proposition was not accepted by Cooper and the attorney, so they (Cooper and the attorney) gathered up all of the material that had been left at places where the work had been done and shipped it to plaintiff at Lincoln. Shortly afterwards this action was begun.

We have examined the instructions given by the court, and find that they fairly submitted to the jury the question, and the only question for their consideration, viz., whether the plaintiff had sold and delivered the goods and merchandise in controversy to the defendants. The jury, upon the conflicting evidence to which we have referred, found in favor of defendants, and returned their verdict accordingly. Judgment was entered upon that verdict, and, regardless of how we might have determined the weight of the evidence upon the record now before us if the matter were before us as an original proposition, we cannot say that the verdict is not sustained by the evidence.

Finding no error in the record, we recommend that the judgment of the district court be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.